Leslie A. Cohen, Esq. (SBN: 93698)
leslie@lesliecohenlaw.com
J'aime K. Williams Esq. (SBN 261148)
jaime@lesliecohenlaw.com
LESLIE COHEN LAW, PC
506 Santa Monica Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (310) 394-5900
Facsimile: (310) 394-9280

**Proposed** Attorneys for Debtor in Possession

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re<br><br>LAW OFFICES OF MASRY & VITITOE,<br><br>    Debtor and<br>    Debtor in Possession | Case No. 1;09-bk-20447<br><br>Chapter 11<br><br>**DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JAMES VITITOE**<br><br>Date: August 27, 2009<br>Time: 1:30 pm<br>Place: Hon. Maureen Tighe |

TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY JUDGE:

    The Law Offices of Masry & Vititoe ("M&V") ("Applicant" or the "Debtor"), Debtor in Possession in the above captioned case, hereby requests, on an emergency basis (the "Motion"), that the Court enter interim and final Orders authorizing its use of cash collateral pursuant to Section 363(c)(2)(B) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b)(2).

    This Motion is made and based upon the moving papers, the attached Memorandum of Points and Authorities, the attached Declaration of James Vititoe in support of the Debtor's Emergency Motion, the

attached Exhibit A, the arguments and representations of counsel and any oral or documentary evidence presented at the time of the hearing.

WHEREFORE, the Debtor respectfully requests that the Court enter interim and final Orders on an emergency basis (1) granting this Motion; (2) authorizing the Debtor's use of cash collateral pursuant to Section 363(c)(2)(B) of the Bankruptcy Code and Federal Rule of Bankruptcy Procedure 4001(b)(2), or in the alternative, pursuant to Section 506(c); (3) setting a further hearing for the continued use of cash collateral; and (4) for such further and other relief as the Court may deem just and proper.

Dated: August 24, 2009

Leslie Cohen Law, PC

_____/s/ Leslie A. Cohen_____
Leslie A. Cohen
Proposed Counsel for Debtor and
Debtor in Possession

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND NEED FOR HEARING ON SHORTENED TIME

The Debtor has an immediate and ongoing need for use of cash collateral as that phrase is used in the Bankruptcy Code. Currently, Debtor's only source of funds is the receipts of fees and costs arising from cases handled in its law practice, in which secured creditor Counsel Financial asserts a security interest.[1] To preserve its business, Debtor must continue to compensate its staff and pay its expenses in order to maintain its current clients and caseload. In addition, Debtor's use of cash collateral is necessary to increase and continue to generate revenue by obtaining new clients and expanding its caseload. Accordingly, Debtor requires the use of cash collateral to fund its Operating Budget, a copy of which is attached hereto as Exhibit A, and such payment must occur without delay in order for Debtor to continue business operations.

Prior to the hearing on this Motion, the Debtor intends to negotiate with Counsel Financial with respect to a consensual stipulation for use of cash collateral. In the event that such an agreement is reached, Debtor shall request that this Court approve a Stipulation for use of cash collateral at the time of the hearing.

By this Motion, the Debtor seeks a court order authorizing the use of cash collateral for a period of 15 days, through September 11, 2009, and thereafter on a final basis for the duration of this case. The Debtor will provide adequate protection to its secured creditor, Counsel Financial, as described below in the Section on Adequate Protection.

Use of cash collateral is necessary to operate the Debtor's business for the benefit of all creditors. The proposed use of cash collateral is necessary to preserve and enhance the value of the Debtor's business. As set forth below, without use of cash collateral, the Debtor's business will suffer irrevocably, and the Debtor will be unable to reorganize. Approval of this Cash Collateral Motion is necessary without delay to allow for the use of cash collateral for the period beginning August 14, 2009 so that the Debtor can pay operating expenses including, without limitation, payroll due for the first 2 weeks post petition. For the reasons set forth herein, the Debtor requests that this Cash Collateral Motion be granted in its entirety.

---

[1] As set forth in the attached Budget, in addition to its legal fee income, Debtor anticipates receiving an insurance refund of $280,000 in Month 2 which is not cash collateral and not subject to secured claims.

## II. BACKGROUND

Debtor is a law firm that is engaged by its clients on a contingency basis. As such, the Debtor maintains its operations through the success and recoveries of its caseload. Debtor's financial issues leading to this chapter 11 case were a result of the impact of litigation precipitated by the passing of one of its founders, Edward Masry. Not only did a number of litigants come forward alleging that Mr. Masry had promised them certain assets and cash from the firm, additionally, his own estate and heirs instituted claims which have caused the firm to spend its resources, in time and staff, defending such claims. To date, Debtor has expended over $3,000,000 in fees related to these claims and ensuing litigation. This drain of money and staff resources has threatened the Debtor's cash flow and focus, consequently making it more difficult to pay for ongoing litigation expenses, and operating expenses while maintaining the current debt service to Counsel Financial.

In order to get relief from the burden this litigation has caused, in time and money, and to allow it to formulate a strategy for treatment of valid claims in an organized fashion, Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code on August 14, 2009. It is Debtor's objective to reorganize under chapter 11 as quickly as possible, and emerge from the protection of the Bankruptcy Code with these debts and litigation restructured.

## III. THE COURT MAY AUTHORIZE USE OF CASH COLLATERAL

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code, which provides in part: "If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." Bankruptcy Code Section 363(c)(1) permits the Debtor to use, sell or lease property in the ordinary course of business. However, Section 363(c)(3) imposes an absolute prohibition on the use, sale or lease of cash collateral unless: (1) the creditor with an interest in the collateral consents; or (2) the court authorizes the use after notice and a hearing. Cash collateral is defined in Section 363(a) as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . . ."

The Debtor is informed that Counsel Financial asserts a security interest in the Debtor's assets, including the Debtor's portion of the recoveries expected from its current caseload. Therefore, such assets would appear to constitute cash collateral pursuant to Section 363(a) of the Bankruptcy Code. Where use of cash collateral is authorized, it may only be used to pay the actual and necessary expense of operation. Matter of Plaza Family Partnership, 95 B.R. 166 (E.D. Cal. 1989); In re MadCat Two, Inc., 120 B.R. 990 (Bankr E.D. Ark. 1990).

Other than an anticipated insurance refund in Month 2, the receipts in which Counsel Financial asserts a security interest comprise the only source of funds for Debtor's operations. The Debtor must continue to operate in order to prosecute its cases to generate funds to satisfy secured and unsecured claims, and to bring in new business which will be a further source of income for payment of creditors' claims. As such, the use of these monies is essential to the Debtor's continued viability.

The use of cash collateral pursuant to this Cash Collateral Motion is justified in this case. Absent the use of the cash collateral, the Debtor's business will suffer immediate and irreparable harm and will not survive, all to the injury of the estate's unsecured creditors as a well as secured creditor Counsel Financial. The preservation of the going-concern value of the Debtor is of the utmost importance to the bankruptcy estate. Moreover, the interests of all creditors will be better served by the continued operation of the Debtor's business. Without the benefits being afforded by the use of the cash collateral, the Debtor's ability to maintain its business operations, to preserve the going-concern value of its business and assets, and to reorganize its business operations in order to maximize the value of the estate's assets, will be destroyed.

### IV. THE SECURED CREDITOR IS ADEQUATELY PROTECTED

Pursuant to Section 363(e) of the Bankruptcy Code, the Court may condition the use of property, including cash collateral, as necessary to provide adequate protection of an entity's interest in such cash collateral. The question of whether a secured party's interest in collateral is adequately protected, by its nature, must be determined on a case by- case basis. In re Belco, Inc., 38 B.R. 525, 527 (Bankr. W.D. Ok. 1984); City Nat'l Bank v. San Clemente Estates (In re San Clemente Estates), 5 B.R. 605, 609 (Bankr. S.D. Cal. 1980) ("adequate protection must be applied in light of the peculiar facts of each case and upon equitable considerations arising therefrom."). Adequate protection is intended to accommodate for the risk of "decrease in the value of [the secured creditor's] interest in such property." Generally, adequate protection is sought

where the collateral is expected to depreciate during the course of the bankruptcy, either through use or time. In re George Ruggiere Chrysler-Plymouth, Inc., 727 F.2d 1017, 1019 (11th Cir. 1984). Therefore, if there is no diminution in the value of the assets, secured creditors are not entitled to adequate protection. See, United States v. Booth Tow Servs., Inc., 64 B.R. 539, 543 (W.D. Mo. 1985).

Here, the Debtor's purpose for requesting the use of the Cash Collateral is the preservation and enhancement of the estate's assets and the protection against any diminution in the value of its cases. The right to use the Cash Collateral for this purpose is well-recognized. See, e.g., In re Marion Street Partnership, 108 B.R. 218, 227 (Bankr. D. Minn. 1989) (allowed the debtor to use the cash collateral to pay ordinary expenses and management fees without requiring further adequate protection); In re Orlando Trout Creek Ranch, 80 B.R. 190, 192 (Bankr. N.D. Cal. 1987) (adequate protection exists when the debtor uses cash collateral for its ordinary and necessary operating expenses so long as the value of the underlying collateral is maintained); Stein v. United States Farmers Home Adm. (In re Stein), 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (use of cash collateral authorized despite creditor being undersecured when such use was necessary to the continued operations of the debtor); Hartigan v. Pine Lake Village Apartment Co. (In re Pine Lake Village Apartment Co.), 16 B.R. 750, 756-57 (Bankr. S.D.N.Y. 1982) (debtor permitted to use cash collateral generated from rental income to enhance the value of real property which also secured creditor's claim).

The Debtor is not proposing to alter the extent, priority or validity of the liens held by Counsel Financial. In addition, using cash collateral to continue business functions, attract new clients, and maintain its current caseload will serve only to enhance the value of the assets which Counsel Financial claims constitute its collateral. All rights and remedies as between Counsel Financial and the estate with respect to Counsel Financial's claims will be preserved.

Although the term "adequate protection" is not expressly defined in the Bankruptcy Code, section 361 provides three non-exclusive but illustrative examples of what constitutes adequate protection: (1) periodic cash payments equivalent to the decrease in the value of the collateral; (2) an additional or replacement lien to the extent of the collateral's decrease in value; and (3) such other relief as will result in the realization by the creditor of the "indubitable equivalent" of its interest in the property. See, 11 U.S.C. § 361 (2008). To determine whether a secured party's interest in cash collateral is adequately protected the court must determine: (1) the value of the cash collateral; and (2) whether the proposed use of the cash collateral

threatens such value. George Ruggiere, 727 F.2d at 1020; see also United Savings Association of Texas v. Timbers of Inwood Forest Associates, 484 U.S. 365 (1988). If the collateral in which the creditor has a security interest is worth less than the amount owed to the creditor, the Debtor must only provide adequate compensation to the extent that the value of the collateral is decreasing. Timbers, 108 S.Ct. at 629; In re McCombs Properties VI, Ltd., 88 B.R. 261, 266 (Bankr. C.D. Cal. 1988) (post-Timbers case; adequate protection must be provided if the value of the collateral is likely to diminish during the time the cash collateral is used).

Here, the assets in which Counsel Financial claim an interest, are the cash payments resulting from Debtor's recoveries in its cases. As additional monies for fees and costs will be received during the Debtor's continued operations in chapter 11, there is no risk that this collateral will diminish in value unless Debtor is not allowed to continue its business. To the extent necessary, the Debtor is prepared to grant Counsel Financial a replacement lien in fee and cost recoveries generated during the period for which use of cash collateral is approved, to the same validity, priority and extent as its pre-petition lien. Moreover, for months one and two, Debtor proposed to make payments to Counsel Financial up to the amount of monthly debt service, to the extent that its recoveries in any given month exceed the monthly Operating Budget attached as Exhibit A. It is anticipated that, in month one, there will not be excess from which payment can be made. However, it is anticipated that there will be a payment made in month two, and to the extent that funds are sufficient after paying operating expenses in month 2 (including making up shortfalls for month one as noted in Exhibit A), Debtor proposes to make a catch-up payment for month one. In this way, Counsel Financial is adequately protected on a current basis in addition to the fact that its collateral is at no risk of diminishing in value and its liens remain unaffected by the use of cash collateral. In short, Counsel Financial is adequately protected by the proposed use of cash collateral, and there is virtually no risk to its position. "[A]dequate protection must be determined liberally, permitting debtor maximum flexibility in structuring a proposal for adequate protection." Unsecured Creditors' Comm. v. Jones Truck Lines, Inc. (In re Jones Truck Lines, Inc.), 156 B.R. 608, 610 (W.D. Ark. 1992) (citing In re Martin, 761 F.2d 472, 474 (8th Cir. 1985).

7
DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL

## V. ALTERNATIVELY, DEBTOR IS AUTHORIZED UNDER BANKRUPTCY CODE §506(C) TO USE THE CASH COLLATERAL

Bankruptcy Code section 506(c) provides an alternative ground for authorizing Debtor's use of the Cash Collateral. Section 506(c) states, in relevant part: "The trustee may recover from property securing an allowed secured claim, the reasonable, necessary costs and expenses of preserving . . . the property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c) (2007). In interpreting section 506(c), the Ninth Circuit has held that the Code does not "require that the claimant have the best interests of the secured creditor in mind, but only that the expenditures be 'reasonable, necessary costs and expenses of preserving,' or disposing of, such property. North County Jeep and Renault v. General Elec. Credit Corp. (In re Palomar Truck Corp.), 951 F.2d 229. 232 (9th Cir. 1991). Accordingly, under § 506(c), the trustee or debtor in possession may use the cash collateral of a secured creditor to preserve that creditor's collateral. See In re 499 W. Warren Street Assocs., Ltd. Partnership, 142 B.R. 53, 57-58 (Bankr. N.D.N.Y. 1992); In re Cardinal Industries, Inc., 118 B.R. 971, 981 (Bankr. S.D. Ohio 1990); In re Pine Lake Village Apt. 6, 16 B.R. 750, 756 (Bankr. S.D.N.Y. 1982) (in each of these cases, the trustee or debtor in possession was allowed to deplete cash collateral to operate, maintain, and preserve income producing real property).

Given the offer of adequate protection to the secured creditor in this case, the Debtor does not think application of § 506 is necessary. But if it is, the Debtor believes it has demonstrated that the use of cash collateral it contemplates is the only way that will preserve the secured creditor's collateral. The Debtor should be permitted to use cash collateral, as its secured creditor will be protected, and the equity that exists in the estate will be preserved for unsecured creditors.

## VI. CONCLUSION

WHEREFORE, based upon the foregoing, the Debtor respectfully submits that good cause exists to grant this Cash Collateral Motion and requests that the Court enter an order as follows:

1. Authorizing the Debtor to use Cash Collateral consistent with the Operating Budget attached hereto as Exhibit A;

2. Authorizing the Debtor to make adequate protection payments to Counsel Financial for months one and two to the extent that there is sufficient cash on hand available after payment of monthly operating expenses as described in Exhibit A;

3. Granting Counsel Financial a replacement lien on fees and costs generated during the period for which use of cash collateral is approved in accordance with this Motion, to the same validity, priority and extent as its pre-petition lien;

4. Authorizing the Debtor to sign such documents and carry out such actions as are consistent with the purpose of the Cash Collateral Motion.

5. Setting a final hearing on the use of cash collateral;

6. For such other and further relief as this Court deems just and proper;

Dated: August 24, 2009

Leslie Cohen Law, PC

/s/ Leslie A. Cohen
Leslie A. Cohen
Proposed Counsel for Debtor and
Debtor in Possession

## DECLARATION OF JAMES VITITOE

I, James Vititoe, hereby declare as follows:

1. I am over 18 years of age. I am the President of Masry & Vititoe, APC, the Debtor and Debtor in Possession in the above-captioned bankruptcy case. Unless otherwise stated, I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto.

2. I make this declaration in support of the Debtor's Emergency Motion To Approve Use Of Cash Collateral.

3. Debtor is a law firm that is engaged by its clients on a contingency basis. As such, the Debtor maintains its operations through the success and recoveries of its caseload.

4. Debtor's financial issues leading to this chapter 11 case were a result of the impact of litigation precipitated by the passing of one of its founders, Edward Masry. Not only did a number of litigants come forward alleging that Mr. Masry had promised them certain assets and cash from the firm, additionally, his own estate and heirs instituted claims which have caused the firm to spend its resources, in time and staff, defending such claims. To date, Debtor has expended over $3,000,000 in fees related to these claims and ensuing litigation. This drain of money and staff resources has threatened the Debtor's cash flow and focus, consequently making it more difficult to pay for ongoing litigation expenses, and operating expenses while maintaining the current debt service to Counsel Financial.

5. In order to get relief from the burden this litigation has caused, in time and money, and to allow it to formulate a strategy for treatment of valid claims in an organized fashion, Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Bankruptcy Code on August 14, 2009. It is Debtor's objective to reorganize under chapter 11 as quickly as possible, and emerge from the protection of the Bankruptcy Code with these debts and litigation restructured.

6. The Debtor has an immediate and ongoing need for use of cash collateral as that phrase is used in the Bankruptcy Code. Currently, Debtor's only source of funds is the receipts of fees and costs arising from cases handled in its law practice, in which secured creditor Counsel Financial asserts a security interest.[2] To

---

[2] As set forth in the attached Budget, in addition to its legal fee income, Debtor anticipates receiving an insurance refund of $280,000 in Month 2 which is not cash collateral and not subject to secured claims.

preserve its business, Debtor must continue to compensate its staff and pay its expenses in order to maintain its current clients and caseload. In addition, Debtor's use of cash collateral is necessary to increase and continue to generate revenue by obtaining new clients and expanding its caseload. Accordingly, Debtor requires the use of cash collateral to fund its Operating Budget, a copy of which is attached hereto as Exhibit A, and such payment must occur without delay in order for Debtor to continue business operations.

7. Prior to the hearing on this Motion, the Debtor intends to negotiate with Counsel Financial with respect to a consensual stipulation for use of cash collateral. In the event that such an agreement is reached, Debtor shall request that this Court approve a Stipulation for use of cash collateral at the time of the hearing.

8. Use of cash collateral is necessary to operate the Debtor's business for the benefit of all creditors. The proposed use of cash collateral is necessary to preserve and enhance the value of the Debtor's business. Without the use of cash collateral, the Debtor's business will suffer irrevocably, and the Debtor will be unable to reorganize. Approval of this Cash Collateral Motion is necessary without delay to allow for the use of cash collateral for the period beginning August 14, 2009 so that the Debtor can pay operating expenses including, without limitation, payroll due for the first 2 weeks post petition.

9. The assets in which Counsel Financial claim an interest, are the cash payments resulting from Debtor's recoveries in its cases. As additional monies for fees and costs will be received during the Debtor's continued operations in chapter 11, there is no risk that this collateral will diminish in value unless Debtor is not allowed to continue its business. To the extent necessary, the Debtor is prepared to grant Counsel Financial a replacement lien in fee and cost recoveries generated during the period for which use of cash collateral is approved, to the same validity, priority and extent as its pre-petition lien. Moreover, for months one and two, Debtor proposed to make payments to Counsel Financial up to the amount of monthly debt service, to the extent that its recoveries in any given month exceed the monthly Operating Budget attached as Exhibit A. It is anticipated that, in month one, there will not be excess from which payment can be made. However, it is anticipated that there will be a payment made in month two, and to the extent that funds are sufficient after paying operating expenses in month 2 (including making up shortfalls for month one as noted in Exhibit A), Debtor proposes to make a catch-up payment for month one. In this way, Counsel Financial is adequately protected on a current basis in addition to the fact that its collateral is at no risk of diminishing in value and its liens remain unaffected by the use of cash collateral.

10. The Debtor believes that the use of cash collateral it contemplates is the only way that will preserve the secured creditor's collateral. The Debtor should be permitted to use cash collateral, as its secured creditor will be protected, and the equity that exists in the estate will be preserved for unsecured creditors.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 24th day of August 2009 at Westlake Village, California.

_____
James Vititoe

| | |
|---|---|
| 1 | **PROOF OF SERVICE** |
| 2 | I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 506 Santa Monica Blvd. Ste. 200, Santa Monica, California 90401. On August 24, 2009, I served the within document(s) described as: |
| 4 | **DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JAMES VITITOE** |
| 6 | on the interested parties in this action as stated on the attached mailing list. |
| | ☐ (BY MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I am readily familiar with this firm's practice for collection and processing of correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing contained in affidavit. |
| | ☒ (BY EXPRESS MAIL) By placing true copies of the foregoing document(s) in a sealed envelope addressed as set forth on the attached mailing list. I placed each such envelope for collection and overnight mailing following ordinary business practices. I am readily familiar with this firm's practice for collection and processing of Express Mail to be sent overnight by the U.S. Postal Service. Under that practice, it would be deposited on that same day in the ordinary course of business, with Express Mail postage thereon fully prepaid, in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the U.S. Postal Service for receipt of Express Mail. |
| | ☐ (BY OVERNIGHT DELIVERY) I deposited in a box or other facility regularly maintained by Federal Express, an express service carrier, or delivered to a courier or driver authorized by said express service carrier to receive documents, true copies of the foregoing document(s) in a sealed envelope or package designated by the express service carrier, addressed as set forth on the attached mailing list, with fees for overnight delivery paid or provided for. |
| | ☐ (BY FAX) By transmitting a true copy of the foregoing document(s) via facsimile transmission from this firm's facsimile machine, to each interested party at the facsimile machine telephone number(s) set forth on the attached mailing list. Said transmission(s) were completed on the aforesaid date at the time stated on the transmission record issued by this firm's sending facsimile machine. Each such transmission was reported as complete and without error and a transmission report was properly issued by this firm's sending facsimile machine for each interested party served. A true copy of each transmission report is attached to the office copy of this proof of service and will be provided upon request. |
| | ☒ (BY E-MAIL) By transmitting true copies of the foregoing document(s) to the e-mail addresses set forth on the attached mailing list. |
| | I declare that I am employed in the offices of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. |
| | Executed on August 24, 2009, at Santa Monica, California. |

J'aime Williams                                         /S/ J'aime Williams
(Type or print name)                                  (Signature)

2

# SERVICE LIST

**Debtor in Possession**
Law Offices of Masry & Vititoe
5707 Corsa Avenue, 2nd Floor
Westlake Village, CA 91362

**U.S. Trustee**
Katherine Bunker
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367
kate.bunker@usdoj.gov

## Secured Creditors

California Attorney Lending LLC [BY EMAIL]
c/o Cynthia Cohen – Paul Hastings
515 South Flower St, 25th Fl
Los Angeles, CA 90071
cynthiacohen@paulhastings.com

Bank of Whittier [BY OVERNIGHT MAIL]
15141 East Whittier Blvd
Whittier, CA 90603

## 20 Largest Unsecured Creditors:

Joseph DiNardo [BY EMAIL]
The DiNardo Firm
6400 Main Street #120
Williamsville, NY 14221
jdinardo@counselfin.com

California Lit Funding [BY EMAIL]
c/o Richard Schwartz, Esq.
6351 Owensmouth Avenue # 100
Woodland Hills, CA 91367
raspc@aol.com

Jackie Masry [BY EMAIL]
c/oDelores Yarnall
220 N. Glendale Avenue #103
Glendale, CA 91206
dyarnall@yarnalllaw.com

Louis Masry / Louanne Masry [BY EMAIL]
c/o John Rochefort - Alston & Bird
333 S. Hope Street 16th Floor
Los Angeles, CA 90071
Mark.rochefort@alston.com

Estate of Edward Masry [BY EMAIL]
c/o Louis Masry
c/o John Rochefort - Alston & Bird
333 S. Hope Street 16th Floor
Los Angeles, CA 90071
Mark.rochefort@alston.com

Paul Taing [BY OVERNIGHT MAIL]
c/o John Carpenter
Carpenter & Zuckerman LLP
8827 W. Olympic Blvd.
Beverly Hills, CA 90211

Chen Shih [BY OVERNIGHT MAIL]
c/o John Carpenter
Carpenter & Zuckerman LLP
8827 W. Olympic Blvd.
Beverly Hills, CA 90211

Law Offices of Parker Milliken [BY EMAIL]
c/o Rick Robins, Esq.
555 S. Flower Street
Los Angeles, CA 90071
rrobins@pmcos.com
rblessing@pmcos.com

Law Offices of McCurdy & McCurdy [BY EMAIL]
c/o Scot Wert, Esq.
817 Greenview Drive
Grand Prairie, TX 75050
swert@fostersear.com

3

[BY OVERNIGHT MAIL]
AT&T Advertising & Publishing
PO Box 989046
West Sacramento, CA

Yellowbook [BY OVERNIGHT MAIL]
Post Office Box 3162
Cedar Rapids, IA 5240

Idearc Media LLC [BY OVERNIGHT MAIL]
Post Office Box 619009
DFW Airport, TX 75261

**Special Notice**
Thomas Geher [BY EMAIL]
tmg@jmbm.com

JKK [BY OVERNIGHT MAIL]
5030 Barrier Island Court
Mount Pleasant, SC 29466

LexisNexis / lawyers.com [BY OVERNIGHT MAIL]
Post Office Box 894166
Los Angeles, CA 90189

# **EXHIBIT A**

| Masry & Vititoe Cost Projections for 30/30 Days | | |
|---|---|---|
| Category | First 30 Days | Second 30 Days |
| Payroll - Monthly (This monthly entry includes employer obligations for Medicare and OASDI. Payroll service pays employees, Fed Income Tax and California SITW) | $120,000.00 | $120,000.00 |
| O/S - Monthly (consultants, agents, etc) | $14,000.00 | $14,000.00 |
| Edward Masry Employment Contract | $19,046.00 | $19,046.00 |
| O/S - Attorney for Appearances | $1,000.00 | $1,000.00 |
| Draw - James Vititoe | $50,000.00 | $50,000.00 |
| Expense - Rent | $19,970.00 | $19,970.00 |
| Insurance: Work Comp | $824.42 | $824.42 |
| Insurance - Corporate Liability Coverage (Acct G530509) | $1,550.00 | $1,550.00 |
| Insurance - Employee Health Group / Vision / Dental | $12,300.00 | $12,300.00 |
| Insurance - Vititoe Life Insurance (quarterly pmt - due Sept 7, 2009) [required by secured creditor] | $16,594.50 | $0.00 |
| Expense - Auto Leases | $3,135.00 | $3,135.00 |
| Expense - Auto / Gas / Maintenance | $5,676.00 | $5,676.00 |
| Expense - Payroll Service | $378.00 | $378.00 |
| Expense - Security Company | $55.00 | $55.00 |
| Expense - Maintenance for office space | $1,000.00 | $1,000.00 |
| Expense - Office Expenses (supplies, paper, coffee, DirecTV, copying, water, other expenses, transportation) | $8,000.00 | $8,000.00 |
| Expense - Business Meals / Other Lodging | $3,500.00 | $3,500.00 |
| Expense - Equipment Lease & Rental / Copiers / Postage Meter | $1,650.00 | $1,650.00 |
| Expense - Equipment repairs | $175.00 | $175.00 |
| Expense - Regular Mail | $1,030.00 | $1,030.00 |
| Expense - Telephones (hardware, landlines, internet and cellular) | $11,500.00 | $11,500.00 |
| Expense - Printing (letterhead, envelopes, etc) | $1,000.00 | $1,000.00 |
| Expense - Advertising ** | $35,000.00 | $30,000.00 |
| Expense - Computers (hardware / software / support / technicians / providers) | $7,000.00 | $7,000.00 |
| Expense - Accounting Services ** ♦♦ | $10,000.00 | $10,000.00 |
| Expense - Corporate Attorney Fees ** ♦♦ | $25,000.00 | $25,000.00 |
| Expense - Bankruptcy Attorney Fees - Leslie Cohen ♦♦ | $20,000.00 | $20,000.00 |
| Expense - Legal Library | $789.00 | $789.00 |
| Expense - Legal Research | $858.00 | $858.00 |
| Expense - Insurance: Legal Malpractice | $2,651.13 | $0.00 |
| Expense - Legal Malpractice Renewal Deposit (comes due 9/30/09) | $0.00 | $20,000.00 |
| Expense - Dues / State Bar / Memberships | $2,000.00 | $2,000.00 |
| Expense - Seminars / Continuing Education | $2,000.00 | $2,000.00 |
| Expense - Bank Charges | $2,500.00 | $1,500.00 |
| Expense - Charitable Donations - Commitments ** | $1,000.00 | $1,000.00 |
| Property Tax - LA County | | |

| Category | First 30 Days | Second 30 Days |
|---|---|---|
| Business Tax - Franchise Tax Board | | |
| Public Relations Firm - BK11 Filing | $12,500.00 | $12,500.00 |
| TOTALS | $413,682.05 | $408,436.42 |
| | | |
| **PERSONAL INJURY DEPARTMENT** | | |
| Client Expense - Emergency Living Expense Loans / Medical Care / Client Travel Expenses ** | $35,000.00 | $35,000.00 |
| Client Expense - Filing Fees / Attorney Service / Medical Reports / Subpoena Records | $4,000.00 | $4,000.00 |
| Client Expense - investigation | $3,200.00 | $3,200.00 |
| Client Expense - litigation / depositions | $5,000.00 | $5,000.00 |
| Client Expense - interpreters | $3,600.00 | $3,600.00 |
| Client Expense - reproductions / illustrations / medical record copies / scanning | $5,000.00 | $5,000.00 |
| Client Expense - arbitration | $5,000.00 | $5,000.00 |
| Client Expense - experts | $20,000.00 | $20,000.00 |
| Client Expense - PI legal research | $700.00 | $700.00 |
| Client Expense - Fed Ex / mailings | $1,000.00 | $1,000.00 |
| Client Expense - travel - Hoover Bus Crash Case ** | $50,000.00 | $50,000.00 |
| Client Expense - Attorney Service | $500.00 | $500.00 |
| TOTALS | $133,000.00 | $133,000.00 |
| | | |
| **AVIATION DEPARTMENT** | | |
| Expenses-Mass Client Mailings / Client Information & Document Maintenance / Client Support Services ($65k for existing cases and 50k for anticipated new cases/client development) ++ | $115,000.00 | $115,000.00 |
| Client Expense (aviation)- Fed Ex / mailings | $2,500.00 | $2,500.00 |
| TOTALS | $117,500.00 | $117,500.00 |
| | | |
| **TOXIC/PHARMACEUTICAL MASS TORTS INJURY DEPARTMENT** | | |
| Expenses-Mass Client Mailings / Client Information & Document Maintenance / Client Support Services ($6,500 for existing cases and $5,000 for anticipated new cases/client development) | $11,500.00 | $11,500.00 |
| | | |
| **GRAND TOTALS** | **$675,682.05** | **$670,436.42 (#)** |
| | | |
| Expense - Monthly Interest Payable to California Attorney Lending (Counsel Financial) | $374,863.04 | $374,863.04 |
| *(**): At the firm's discretion, all or part of the listed expenses for the first thirty days maybe deferred to the second thirty days if necessary* | $156,000.00 | |

| Category | First 30 Days | Second 30 Days |
|---|---|---|
| *(++)*: At the firm's discretion an amount up to $20,000 of the listed expense for the first thirty days maybe deferred to the second thirty days if necessary | $20,000.00 | |
| *(♦♦)*: Professional fees are subject to court approval. Professional fees are reserved in the budget in accordance with the employment agreements of the professionals. | | |
| *(#)*: plus any amounts deferred from first thirty days | | |

## PROJECTED INCOME (ANTICIPATED)

Projected income is for cases that have settled or are in the process of settling. The following amounts are the projected net fees and costs to Masry & Vititoe.

| | Next Thirty Days | Next Sixty Days |
|---|---|---|
| PI27806 (Attorney Fees) | $37,500.00 | |
| PI27806 (Costs) | $7,985.00 | |
| PI28503 (Attorney Fees) | $1,500.00 | |
| PI28503 (Costs) | $307.00 | |
| PI29007 (Attorney Fees) | $25,000.00 | |
| PI29007 (Costs) | $1,344.00 | |
| PI28474 (Attorney Fees) | $55,000.00 | |
| PI28474 (Costs) | $76,319.04 | |
| PI28811 - Phase #1(Costs) | | $575,268.69 |
| PI28561 (Attorney Fees) | | $10,000.00 |
| PI28561 (Costs) | | $4,536.00 |
| PI28611 (Attorney Fees) | | $35,000.00 |
| PI28611 (Costs) | | $3,976.00 |
| PI28614 (Attorney Fees) | | $5,000.00 |
| PI28614 (Costs) | | $57.00 |
| PI28648 (Attorney Fees) | | $5,000.00 |
| PI28648 (Costs) | | $280.00 |
| PI28654 (Attorney Fees) | | $12,500.00 |
| PI28654 (Costs) | | $1,568.00 |
| PI28662 (Attorney Fees) | | $1,000.00 |
| PI28662 (Costs) | | $48.00 |
| PI28298 (Attorney Fees) | | $12,000.00 |
| PI28298 (Costs) | | $14,221.00 |
| AV28338 (Attorney Fees) | $100,000.00 | |
| AV28338 (Attorney Fees) | | $175,000.00 |
| AV28338 (Attorney Fees) | $200,000.00 | |
| AV28338 (Attorney Fees) | | $25,000.00 |
| AV28338 (Attorney Fees) | | $120,000.00 |
| AV28338 (Attorney Fees) | | $26,500.00 |
| AV28509 (Attorney Fees) | | $249,000.00 |
| AV28509 (Costs) | | $31,679.00 |
| Reimbursement (not cash collateral) | | $280,000.00 |
| **TOTALS** | **$504,955.04** | **$1,587,633.69** |