John M. Rochefort (CA Bar No. 054427)
Leib M. Lerner (CA Bar No. 227323)
Adriene Plescia Lynch (CA Bar No. 259100)
**ALSTON & BIRD LLP**
333 South Hope Street, Sixteenth Floor
Los Angeles, California 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
mark.rochefort@alston.com
leib.lerner@alston.com
adriene.lynch@alston.com

Attorneys for Estate of Edward L. Masry

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SAN FERNANDO VALLEY DIVISION

| | |
|---|---|
| In re LAW OFFICES OF MASRY & VITITOE, <br><br> Debtor and Debtor in Possession. | Chapter 11 <br><br> Case No.: 1:09-BK-20447-MT <br><br> RESPONSE OF ESTATE OF EDWARD L. MASRY TO DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL; DECLARATION OF JOHN M. ROCHEFORT IN SUPPORT THEREOF <br><br> <u>Continued Interim Hearing</u> <br> Date:   September 9, 2009 <br> Time:   1:00 p.m. <br> Place:   Courtroom 302 <br>            21041 Burbank Boulevard <br>            Woodland Hills, CA 91367 |

TO THE HONORABLE MAUREEN A. TIGHE, UNITED STATES BANKRUPTCY

JUDGE, AND TO ALL PARTIES IN INTEREST:

The Estate of Edward L. Masry ("Masry Estate") submits its Response of Estate of Edward

L. Masry to Debtor's Emergency Motion to Approve Use of Cash Collateral (the "Motion"), as

follows:

I. <u>**SUMMARY**</u>

- Debtor should be ordered to pay the amounts due (the "Payments") under the Edward L.

1

31497886 2.DOC

Masry Employment Agreement as required by 11 U.S.C. § 1114(e)(1) and proposed by the Debtor in its budget attached to the Motion. The Bankruptcy Code requires these death benefit Payments to continue unchanged through plan confirmation, absent notice, hearing and specific findings by the Court pursuant to 11 U.S.C. § 1114(f)-(h).

- The Debtor and Counsel Financial should be required to establish that Counsel Financial has a valid interest in the Debtor's cash collateral before any further limitations are placed on the Debtor's use of its cash or a final order is entered. 11 U.S.C. § 363(p)(2).

## II.  BACKGROUND

During 2004, the Debtor entered into an agreement with Edward L. Masry ("Edward"), titled the Employment Agreement (the "Agreement"). A true and correct copy of the Agreement is attached as **Exhibit 1** to the Declaration of John M. Rochefort attached hereto.

The Agreement provides in pertinent part as follows:

> If Executive dies during the Employment Term, the Employment Term shall terminate as of the date of Executive's death.

Agreement, Section 7(a).

The Agreement further provides for Basic Termination Payments as found in Section 7(e)(i) of the Agreement. In addition, Section 7(e)(ii) of the Agreement provides for Supplemental Termination Payments, as follows:

> Upon the termination of the Employment Term at any time for any reason, the Company also shall pay or provide to Executive (or, in the case of his death, unless otherwise specified below, to the beneficiary designated by Executive in a written instrument filed with the Company or, in the absence of an effective beneficiary designation, to the legal representatives of his estate) the following:
>
> (A)    Executive's Base Salary described in Section 5(a) above shall be continued for a period of sixty (60) months following the termination.
>
> (B)    The automobile expense benefit described in Section 5(b) above shall be continued for the benefit of Executive and his spouse or widow, as the case may be, for a period of sixty (60) months following the termination.
>
> (C)    Executive and his eligible dependants shall be entitled to continue to participate at the same aggregate benefit levels in the employee benefit plans described in Section 6 above in which he was a participant immediately prior to the termination, to the extent permitted under the

31497886 2.DOC

terms of such plans and applicable law for a period of sixty (60) months following the termination and at no out-of-pocket cost.

(D) As deferred compensation for services previously rendered, which normally would be reflected in Annual Bonus, an amount equal to thirty-five percent (35%) of the Substantial Case Fees shall be paid on or before the tenth (10th) day of the month following each month in which Substantial Case Fees are received by the Company. "Substantial Case Fees" shall mean the fees and cost reimbursements received by the Company during the year in which the termination occurs after the last day of the month preceding the month in which the termination occurs and in all subsequent years for its services in the Substantial Cases less only the portion of such fees and cost reimbursements that the Company is obligated to pay to other law firms and attorneys for their services in the Substantial Cases. "Substantial Cases" shall mean only the cases for which projections were made and periodically updated in the "summary and projection" book maintained by the Company prior to and as of the date the termination occurs in accordance with its customary practice.

Agreement, Section 7(e)(ii).

Edward died on December 5, 2005. The Masry Estate is informed and believes that the Debtor has been paying the Executive's Base Salary, required by Section 7(e)(ii)(A) of the Agreement, directly to Edward's widow, Joette Masry. The Masry Estate and Joette Masry are in litigation to determine to whom the Basic and Supplemental Termination benefits under the Agreement should be paid. On May 6, 2009, a state court probate hearing was held concerning the beneficiary of the Executive's Base Salary, among other matters, and the state court ruled that the Masry Estate is entitled to half of the Executive's Base Salary going forward. A true and correct copy of the state court's Tentative Rulings for the May 6, 2009 hearing is attached as **Exhibit 2** to the Declaration of John M. Rochefort attached hereto. On September 3, 2009, the state court held a hearing on the form of order for its rulings. The order provides that fifty percent of all Basic and Supplemental Termination Payments that become due under the Agreement are to be paid to Louis Masry and Louanne Masry, as co-trustees of the 2005 Edward L. Masry Trust. A true and correct copy of a proposed form of order to be submitted to the Court by the Masry Trust, and that comports with the Court's rulings regarding the form of order, is attached as **Exhibit 3** to the Declaration of John M. Rochefort attached hereto.

## III. ARGUMENT

### A. Debtor should be ordered to pay the amounts due under the Edward L. Masry Employment Agreement as required by 11 U.S.C. § 1114(e)(1) and proposed in the Debtor's budget attached to the Motion

#### 1. Payments under the Agreement are "retiree benefits" as defined by 11 U.S.C. § 1114(a)

The Debtor's budget attached to the Motion has a line item for the payments required by the Agreement. This line item in the budget should be approved. Section 1114 of the Bankruptcy Code sets forth special protection for "retiree benefits" as defined in that section. In fact, a plan cannot be confirmed unless the plan's treatment of retiree benefits complies with Section 1114. *See* 11 U.S.C. § 1129(a)(13) ("The court shall confirm a plan only if all of the following requirements are met…(13) the plan provides for the continuation after its effective date of payments of all retiree benefits, as that term is defined in section 1114 of this title…").

The definition of retiree benefits includes the benefits provided by the Debtor to Edward L. Masry pursuant to the Agreement:

> For purposes of this section, the term "retiree benefits" means payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title.

11 U.S.C. § 1114(a).

Section 7(a) of the Agreement is a "plan, fund, or program" that was "maintained or established in whole or in part by the debtor prior to filing a petition commencing a case" under the Bankruptcy Code, to make "payments to any entity or person for the purpose of providing or reimbursing…benefits in the event of sickness, accident, disability, or death…."

Here, the Agreement between Debtor and Edward L. Masry was executed in 2004. Edward died in 2005. Upon his death, the Employment Term as defined in the Agreement was terminated, and Edward's beneficiaries were from that moment entitled to receive the benefits provided under the Agreement in the event of Edward's death. The Debtor has continued to pay benefits under the

4

Agreement to Joette Masry since that time, and there is litigation between Joette Masry and the Masry Estate concerning the rights to the benefits under the Agreement.

In a very recent case on point, *In re Wapakoneta Mach. Co.*, 2008 WL 202367 (Bankr. N.D. Ohio 2008), John Gosnell was a shareholder and employee of the company who sold his stock and retired. The stock purchase agreement included a provision entitling Gosnell and his wife to continued health care benefits under the company's plan. *Id.* at *1. Gosnell was the only retiree covered under the stock purchase agreement. After filing for bankruptcy, the company refused to pay the benefit, which Gosnell sought to enforce pursuant to Section 1114. *Id.*

The company and creditors committee maintained that since the agreement covered only Gosnell, it was not a "plan, fund, or program" within the meaning of 11 U.S.C. § 1114(a). The bankruptcy court rejected that argument, finding that argument "flawed." There was no dispute that the stock purchase agreement contained a provision providing for the benefits or that the company did not make arrangements that those benefits should be provided. Following the Supreme Court's decision in *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651 (2006), the court refused to interpret "plan, fund, or program" using ERISA terms. *Id.* at *4, *citing Howard*, 547 U.S. 651 (Supreme Court declining to borrow a definition from "a statute designed without bankruptcy in mind" and instead considering the "essential character" of the arrangement).

The *Wapakoneta* court ruled that the single beneficiary program constituted a "plan, fund, or program" protected by 11 U.S.C. § 1114. "Under the Agreement, Debtor had an ongoing responsibility to provide Gosnell with the same benefits provided under the Company's health insurance program in place on the date of the Agreement....The court finds this ongoing arrangement maintained by Debtor in order to administer the benefits under the [a]greement with Gosnell constitutes a 'plan, fund, or program' under § 1114(a)." Likewise, the Agreement provides for benefits to be paid on account of Edward's death. That provision is a "plan, fund, or program" pursuant to § 1114(a), and payments should therefore be enforced pursuant to the Bankruptcy Code.

5

**2. The Debtor is required to continue paying "retiree benefits" throughout the case pursuant to 11 U.S.C. § 1114(e) unless the Court permits modification or there is consent**

The Bankruptcy Code requires the Debtor to continue paying retiree benefits throughout the bankruptcy case, unless and except if the Debtor is able to prove that a modification is necessary, or there is consent.

> Notwithstanding any other provision of this title, the debtor in possession, or the trustee if one has been appointed under the provisions of this chapter (hereinafter in this section "trustee" shall include a debtor in possession), **shall timely pay and shall not modify any retiree benefits**, except that - (A) the court, on motion of the trustee or authorized representative, and after notice and a hearing, may order modification of such payments, pursuant to the provisions of subsections (g) and (h) of this section, or (B) the trustee and the authorized representative of the recipients of those benefits may agree to modification of such payments, after which such benefits as modified shall continue to be paid by the trustee.

11 U.S.C. § 1114(e)(1) (emphasis supplied).

Retiree benefit payments required to be paid before plan confirmation have "the status of an allowed administrative expense...." 11 U.S.C. § 1114(e)(2).

**3. The Debtor has not complied with 11 U.S.C. § 1114(f) requiring a proposal and disclosure of necessary information**

In order to obtain consent or to be entitled to a hearing on a proposed modification of retiree benefits, the Debtor must make a proposal that establishes what modifications may be necessary to the retiree benefits. The Debtor is required to provide all necessary information needed to evaluate the proposal. 11 U.S.C. § 1114(f)(2).

The Debtor has not made any proposal to the Masry Estate to modify the retiree benefits. On the contrary, the Debtor has filed a motion to reject the Agreement as an executory contract – even though Edward died in 2005 and the Agreement is nonexecutory. *See In re Int'l Fibercom, Inc. v. Int'l Fibercom, Inc.,* 503 F.3d 933, 941 (9th Cir. 2007) (A contract is executory only if one party's failure to perform its obligation would excuse the other party's performance.). Of course, the Debtor's motion to reject the Agreement contradicts the Debtor's own budget proposal in the

6

Motion, which includes payment of the sums due under the Agreement in comport with § 1114(e)(1).

**4. Retiree benefits cannot be modified without a Debtor's proposal, notice, a hearing, and specific findings by the Court delineated in 11 U.S.C. § 1114(g) that the refusal of the proposal is without good cause and the proposed modifications are necessary for the Debtor's reorganization**

Section 1114(g) requires specific findings in order for retiree benefits to be modified without consent. These findings include (i) that the Debtor made the proposal required by Section 1114(f); (ii) the authorized representative of the retirees has refused to accept the proposal "without good cause;" (iii) the modification is "necessary to permit the reorganization of the debtor and assures that all creditors, the debtor, and all of the affected parties are treated fairly and equitably, and is clearly favored by the balance of the equities...."

Here, no modification has ever been proposed by the Debtor. In fact, the Debtor's cash collateral budget includes a line item for the retiree benefits. Any interim or final order regarding cash collateral should include a budgeted line item requiring payments under the Agreement, because these payments are retiree benefits. Only if the Debtor complies with the modification requirements, may those payments be modified.

"Prior to a court issuing a final order under subsection (g) of this section, if essential to the continuation of the debtor's business, or in order to avoid irreparable damage to the estate, the court, after notice and a hearing, may authorize the trustee to implement interim modifications in retiree benefits." 11 U.S.C. § 1114(h) (emphasis supplied).

Even on an interim basis, retiree benefits can only be modified after notice and hearing, and a finding by the Court that any modification is **essential** or would avoid **irreparable damage** to the estate. The Debtor has not given notice of its intent to modify retiree benefits on an interim basis. Nor has the Debtor provided the Court with any evidence that halting the payments under the Agreement is essential or necessary to avoid irreparable damage to the estate.

31497886 2.DOC

**B.** **Debtor and Counsel Financial should be required to establish that Counsel Financial has a valid interest before any further limitations are placed on Debtor's use of cash**

The Debtor and Counsel Financial should be required to establish that Counsel Financial has a valid interest in the Debtor's cash collateral. Counsel Financial, who has the burden of proof on the issue of validity, priority or extent of its interest in any cash collateral, has not submitted any evidence supporting such assertion. *See* 11 U.S.C. § 363(p). Moreover, the "evidence" submitted by the Debtor runs contrary to a conclusion that Counsel Financial has any interest.

First, the Debtor seems careful not to admit that the lender has a valid security interest. *See* Declaration of James Vititoe, paragraph 6, line 25 ("secured creditor Counsel Financial asserts a security interest"). This begs the question of whether or not Counsel Financial actually has a security interest.

Second, Exhibit A to the Debtor's Summary of Essential Terms Pursuant to LBR 4001-2(C) in Support of Emergency Motion to Approve Use of Cash Collateral (the "Essential Terms") is an incomplete copy of a purported promissory note from the Debtor to California Attorney Lending LLC. The Debtor submits no documents in support of the Motion that show that Counsel Financial (as opposed to California Attorney Lending LLC) is the appropriate counterparty lender.

Third, some of the terms disclosed in Exhibit A may be void or voidable, because they seem to give the lender power over settlements and other matters that, under California law, should not be delegated by a lawyer. For example, section (d)(x) of the promissory note states that an event of default occurs under the note if "there occurs any material change in the value of the Collateral or Borrower's or any Guarantor's ownership interest in the Collateral, that is, in the opinion of the Holder, adverse to its interest and is not corrected to its full satisfaction within 10 days after it gives to the Borrower a notice that it considers such change adverse to its interest." This provision may imply that the lender has some type of control over the Debtor's settlement of cases. If so, the relationship between Debtor and lender may be a prohibited interference "with the Debtor's independence of professional judgment or with the client-lawyer relationship." California Rules of Professional Conduct, Rule 3-310(F)(1). There may be additional questions raised by the portions of the loan documents that were not disclosed to the Court.

8

If either the consideration or the object of a contract is unlawful, the contract is unlawful and may be unenforceable. *See, e.g., McIntosh v. Mills*, 121 Cal. App. 4th 333, 344. A contract is unlawful if it is contrary to an express provision of law, contrary to the policy of express law, even though not expressly prohibited, or otherwise contrary to good morals. Cal. Civ. Code § 1667. "All contracts which have for their object…violation of law, whether willful or negligent, are against the policy of law." *Id.* at § 1668.

It is unknown at this time, and cannot be known from the record submitted by the Debtor or Counsel Financial, whether the purported interest that Counsel Financial may have in the Debtor's cash is void or should be invalidated. It is possible that the Debtor should not be prevented from utilizing its cash in the ordinary course. *See* 11 U.S.C. § 363(c). Determining whether or not the lender's agreement is valid at least requires submission of the entire agreement and relevant transaction documents for the Court and creditor to review before any final order is entered.

## IV.    **CONCLUSION**

The Debtor should be ordered to pay the amounts due (the "Payments") under the Edward L. Masry Employment Agreement as required by 11 U.S.C. § 1114(e)(1) and proposed by the Debtor in its budget attached to the Motion. In addition, Debtor and Counsel Financial should be required to establish that Counsel Financial has a valid interest in the Debtor's cash collateral before any further limitations are placed on the Debtor's use of its cash or a final cash collateral order is entered.

DATED: September 4, 2009                    **ALSTON & BIRD LLP**

/s/Leib M. Lerner

Leib M. Lerner
Attorneys for Estate of Edward L. Masry

31497886 2.DOC

## DECLARATION OF JOHN M. ROCHEFORT

I, John M. Rochefort, declare as follows:

1.     I am an attorney admitted to practice before all courts of the State of California and before this Court. I am a partner in the Los Angeles office of the law firm of Alston & Bird LLP and am one of the attorneys principally responsible for the representation of the Estate of Edward L. Masry (the "Masry Estate") in various state court litigation currently pending, and in the Bankruptcy Case of Law Offices of Masry & Vititoe, bankruptcy case number 1:09-BK-20447-MT. This responsibility includes the maintenance of documents relating to the Masry Estate.

2.     I have personal knowledge of the matters set forth herein, except those matters stated on information and belief, which I believe to be true. This declaration is submitted in support of the Response of Estate of Edward L. Masry to Debtor's Emergency Motion to Approve Use of Cash Collateral.

3.     A true and correct copy of the Employment Agreement (the "Agreement") entered into between the Debtor and Edward L. Masry as of January 1, 2004 is attached as **Exhibit 1** hereto.

4.     Edward L. Masry died on December 5, 2005. I am informed and believe that the Debtor has been paying the Executive's Base Salary, required by Section 7(e)(ii)(A) of the Agreement, directly to Edward L. Masry's widow, Joette Masry. There is litigation between Joette Masry and the Masry Estate concerning the rights to the benefits under the Agreement.

5.     On May 6, 2009, a state court probate hearing was held concerning the beneficiary of the Executive's Base Salary, among other matters, and the state court ruled that the Masry Estate is entitled to half of the Executive's Base Salary going forward. A true and correct copy of the state court's Tentative Rulings for the May 6, 2009 hearing is attached as **Exhibit 2** hereto.

6.     On September 3, 2009, the state court held a hearing on the form of order for its rulings. The order provides in pertinent part that fifty percent of all Basic and Supplemental Termination Payments that become due under the Agreement are to be paid to Louis Masry and Louanne Masry, as co-trustees of the 2005 Edward L. Masry Trust. A true and correct copy of a

proposed form of order to be submitted to the Court by the Masry Trust, and that comports with the Court's rulings regarding the form of order, is attached as **Exhibit 3** hereto.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on September 4, 2009 at Los Angeles, California.

John M. Rochefort

31497886 2.DOC

# EXHIBIT 1

EXHIBIT _1_ PAGE _12_

**MASRY & VITITOE, A PROFESSIONAL CORPORATION**

**EDWARD L. MASRY**

**EMPLOYMENT AGREEMENT**

EXHIBIT __1__ PAGE __13__

# EMPLOYMENT AGREEMENT

THIS EMPLOYMENT AGREEMENT ("Agreement") is made and entered into effective as of January 1, 2004 ("Effective Date"), between MASRY & VITITOE, A PROFESSIONAL CORPORATION, incorporated in California (hereinafter referred to as the "Company"), and EDWARD L. MASRY (hereinafter referred to as "Executive").

## WITNESSETH:

WHEREAS, Executive is currently employed by the Company as an at-will employee; and

WHEREAS, Executive and the Company are currently parties to a certain Deferred Compensation Agreement, dated as of January 1, 2000 (the "Deferred Compensation Agreement"), which the parties' desire to terminate as of the Effective Date of this Agreement, which supersedes it; and

WHEREAS, the Company desires that Executive continue to be employed by the Company, and Executive is desirous of such continued employment, upon the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements hereinafter contained, the parties hereby agree as follows:

1. **Employment**. The Company shall employ Executive, and Executive shall serve the Company, upon the terms and conditions hereinafter set forth.

2. **Term**. The period commencing as of January 1, 2004 (the "Effective Date"), and ending on December 31, 2010 (the "Agreement End Date"), or the date on which this Agreement is earlier terminated in accordance with its terms is referred to herein as the "Employment Term". The Employment Term shall be renewed for successive one-year periods unless either the Company or Executive provides notice of its or his intention not to renew this Agreement at least ninety (90) days prior to the time that this Agreement would otherwise terminate.

3. **Duties**.

 (a) During the Employment Term, Executive shall serve in the capacities of an attorney and the President of the Company, faithfully and to the best of his ability, and shall perform the duties and services that customarily pertain to such positions (the "Services") at the direction and under the supervision of the Board of Directors of the Company (the "Board of Directors"). Executive also shall act as a member of the Board of Directors of the Company, if elected, and shall perform such services all without further compensation other than that for which provision is made in this Agreement.

 (b) During the Employment Term, Executive shall devote his full business time, energy and skill to such employment to the extent required to perform his duties hereunder

and shall not, without the prior written approval of the Board of Directors, become employed by or engaged in any business activity other than that of the Company; provided, however, that Executive shall be permitted to serve as an elected member of the City Council of Thousand Oaks, California, as a member of the Board of Directors of Save the World Air, Inc. and to personally invest in any other corporation, partnership or other entity, so long as any such investment does not require or involve the active participation of Executive in the management of the business of any such corporation, partnership or other entity which would interfere with the execution of Executive's duties hereunder or does not otherwise violate any provision of this Agreement.

4. **Compensation**.

(a) <u>Base Salary</u>. The Company agrees to pay Executive a base salary ("<u>Base Salary</u>") during the Employment Term at the rate of $228,552 per annum. The Base Salary shall be payable periodically in accordance with the Company's normal payroll policies in effect from time to time for executive officers, but in all events no less frequently than monthly. The Board of Directors of the Company shall periodically review the Executive's employment performance for possible merit or cost-of-living increases in such Base Salary.

(b) <u>Annual Bonus</u>. Executive shall be eligible to receive discretionary annual bonus compensation (an "<u>Annual Bonus</u>") based on the determination of the Board of Directors that Executive has not been adequately compensated by Base Salary for services rendered to the Company in the current period and by all compensation in prior periods, including periods prior to the commencement of the Employment Term. Executive and the Company acknowledge that the nature of the Company's practice is such that most of the compensation for the efforts of Executive must be deferred well beyond the current period in which work is performed and, therefore, most of Executive's total compensation will be reflected in the Annual Bonus.

5. **Business Expenses**.

(a) It is contemplated that in connection with his employment hereunder Executive will be required to incur reasonable and customary travel, entertainment and other business expenses. The Company agrees to pay for or reimburse Executive (subject to any expense reimbursement policies established by the Company in effect from time to time as to the nature and extent of various categories of expenses qualified for reimbursement) for all reasonable and customary travel and other business expenses (except for those expenses covered under Section 5(b) below) incurred or expended by him incident to the performance of his duties hereunder upon submission by Executive to the Company of vouchers or expense statements satisfactorily evidencing such expenses.

(b) During the Employment Term, the Company shall also pay for or reimburse Executive for the lease or loan payments, the automobile insurance premiums and other expenses incurred or paid by Executive for three (3) automobiles, provided that Executive submits statements to the Company satisfactorily evidencing such amounts.

## 6. Benefits.

Executive shall be entitled to participate in any life insurance, medical, disability and other insurance and other employee benefit plans, including retirement plans, which are made available during the Employment Term by the Company to employees or executives of Executive's rank to the extent that Executive qualifies under the eligibility provisions of such plan or plans (except as to any medical and dental insurance plans for which any waiting periods may be waived by the Company under the terms of such plans), including, without limitation, paid vacation during each year in accordance with the vacation policies of the Company from time to time in effect.

## 7. Termination of Employment.

(a)  **Death.**  If Executive dies during the Employment Term, the Employment Term shall terminate as of the date of Executive's death.

(b)  **Disability.**  If Executive suffers a Disability (as hereinafter defined) during the Employment Term, the Company shall have the right, upon notice to Executive, to terminate his employment hereunder, effective upon the giving of such notice. "Disability" means Executive's inability to perform substantially his duties and responsibilities to the Company by reason of physical or mental illness, injury, infirmity or condition: (i) for a continuous period of twenty-four (24) months or one or more periods aggregating twenty-four (24) months in any thirty-six (36) month period; or (ii) at such earlier time as it is determined that Executive has a physical or mental illness, injury, infirmity or condition that will likely prevent him from substantially performing his duties and responsibilities for a continuous period of twenty-four (24) months or longer. Any such medical determination of Disability shall be a written certification from a licensed physician reasonably acceptable to both the Board of Directors and Executive or Executive's legal or personal representative (if by reason of the Disability one is appointed).

(c)  **Cause.**  The Company, at its option, may terminate the Employment Term and all of the obligations of the Company under this Agreement for Cause. The Company shall have "Cause" to terminate Executive's employment hereunder in the event of any of the following:

(i)  Executive's conviction of or plea of guilty or *nolo contendere* for any felony or any misdemeanor involving moral turpitude;

(ii)  Executive's willful or grossly negligent failure or refusal to perform and discharge any of his material duties, responsibilities or obligations under this Agreement other than any such failure resulting from incapacity due to physical or mental illness, after a notice demanding substantial performance is given to Executive by the Board of Directors which identifies the manner in which the Board of Directors believes that Executive has not performed and discharged Executive's duties, responsibilities or obligations, subject to an opportunity by Executive to cure within a reasonable time as specified by the Board of Directors in such notice, but not to exceed ten (10) days (in which case the termination shall not take place

until the end of the cure period so specified in such notice, if the failure or refusal has not been cured within such cure period);

(iii)    the Board of Directors determining after a reasonable investigation that Executive has committed acts which constitute fraud, theft, dishonesty, embezzlement or other misappropriation of property of the Company or unlawful appropriation of a corporate opportunity of the Company; or

(iv)    the Executive being disbarred or suspended for more than thirty (30) days from the practice of law in the State of California.

(d)    <u>Voluntary Termination</u>.    Executive, at his option, may terminate the Employment Term for any reason at any time.

(e)    <u>Payments in the Event of Termination</u>.

(i)    <u>Basic Termination Payments</u>.    Upon the termination of the Employment Term at any time for any reason, the Company shall pay to Executive (or, in the case of his death, to the beneficiary designated by Executive in a written instrument filed with the Company or, in the absence of an effective beneficiary designation, to the legal representatives of his estate) the Base Salary earned to the effective date of termination; any unpaid expense reimbursement; any accrued vacation pay; and any unpaid Annual Bonus to the extent determined and declared payable by the Board of Directors prior to the effective date of termination.

(ii)    <u>Supplemental Termination Payments</u>.    Upon the termination of the Employment Term at any time for any reason, the Company also shall pay or provide to Executive (or, in the case of his death, unless otherwise specified below, to the beneficiary designated by Executive in a written instrument filed with the Company or, in the absence of an effective beneficiary designation, to the legal representatives of his estate) the following:

(A)    Executive's Base Salary described in Section 5(a) above shall be continued for a period of sixty (60) months following the termination.

(B)    The automobile expense benefit described in Section 5(b) above shall be continued for the benefit of Executive and his spouse or widow, as the case may be, for a period of sixty (60) months following the termination.

(C)    Executive and his eligible dependents shall be entitled to continue to participate at the same aggregate benefit levels in the employee benefit plans described in Section 6 above in which he was a participant immediately prior to the termination, to the extent permitted under the terms of such plans and applicable law for a period of sixty (60) months following the termination and at no out-of-pocket cost.

(D)    As deferred compensation for services previously rendered, which normally would be reflected in Annual Bonus, an amount equal to thirty-five percent

(35%) of the Substantial Case Fees shall be paid on or before the tenth (10th) day of the month following each month in which Substantial Case Fees are received by the Company. "Substantial Case Fees" shall mean the fees and cost reimbursements received by the Company during the year in which the termination occurs after the last day of the month preceding the month in which the termination occurs and in all subsequent years for its services in the Substantial Cases less only the portion of such fees and cost reimbursements that the Company is obligated to pay to other law firms and attorneys for their services in the Substantial Cases. "Substantial Cases" shall mean only the cases for which projections were made and periodically updated in the "summary and projection" book maintained by the Company prior to and as of the date the termination occurs in accordance with its customary practice.

      (f)    <u>Termination of Obligations</u>.  In the event of termination of the Employment Term in accordance with this Section 7, all obligations of the Company and Executive under this Agreement shall terminate, except for any amounts payable by the Company as specifically set forth in Section 7(e); provided, however, that notwithstanding anything to the contrary contained in this Agreement, the relevant provisions of Section 8 shall survive such termination indefinitely.  In the event of termination of the Employment Term in accordance with this Section 7, Executive agrees to cooperate with the Company in order to ensure an orderly transfer of Executive's duties and responsibilities.

**8.**    **General Provisions**.

      (a)    <u>Assignment; Successors</u>.  This Agreement is personal in its nature and neither of the parties hereto shall, without the consent of the other, assign or transfer this Agreement or any rights or obligations hereunder, other than in the event of the merger, consolidation, transfer, or sale of all or substantially all of the assets of the Company with or to any other individual or entity, in which case the Company shall have the right to assign this Agreement to such successor, provided that this Agreement shall, subject to the provisions hereof, be binding upon and inure to the benefit of such successor and such successor shall discharge and perform all the promises, covenants, duties, and obligations of the Company hereunder, and all references herein to the "Company" shall refer to such successor.

      (b)    <u>Indemnification</u>.  The Company hereby agrees to indemnify and hold the Executive and his wife harmless consistent with the Company's policies in effect from time to time against any and all liabilities, expenses (including attorneys' fees and costs), claims, judgments, fines, and amounts paid in settlement actually and reasonably incurred in connection with any proceeding arising out of the Executive's employment with the Company (whether civil, criminal, administrative or investigative, other than proceedings by or in the right of the Company), if with respect to the actions at issue in the proceeding Executive was not grossly negligent and acted in good faith and in a manner Executive reasonably believed to be in, or not opposed to, the best interests of the Company, and (with respect to any criminal action) Executive had no reason to believe Executive's conduct was unlawful.  Said indemnification arrangement shall (i) survive the termination of this Agreement for a period of seven (7) years, (ii) apply to any and all qualifying acts of Executive which have taken place during the Employment Term, including but not limited to any and all qualifying acts as an officer and/or

director of the Company, and (iii) be subject to any limitations imposed from time to time under applicable law.

(c) <u>Counterparts; Facsimile Signatures</u>. This Agreement may be executed in any number of counterparts, and each such counterpart hereof shall be deemed to be an original instrument, but all such counterparts together shall constitute one agreement. This Agreement may also be executed by the exchange of facsimile signatures to identical counterparts with the same effect as if executed on the same instrument; provided, however, originally signed counterparts shall be exchanged and delivered among the parties within five (5) business days after the date of execution by the parties by facsimile.

(d) <u>Entire Agreement; Amendment</u>. This Agreement contains the entire agreement among the parties with respect to the transactions contemplated by this Agreement and terminates and supersedes all other or prior written or oral agreements or understandings among the parties with respect to Executive's employment by the Company, including without limitation the Deferred Compensation Agreement, which is hereby terminated and shall be of no further force or effect. This Agreement may be modified or amended only by a written instrument executed by all of the parties hereto.

(e) <u>Governing Law; Jurisdiction</u>. This Agreement and the legal relations thus created between the parties hereto shall be governed by and construed under and in accordance with the internal laws of the State of California without reference to the principles of conflicts of laws.

(f) <u>Arbitration</u> In the event any dispute should arise between the parties hereto as to the validity, construction, enforceability or performance of this Agreement or any of its provisions, such dispute shall be settled by arbitration. Said arbitration shall be conducted at Los Angeles, California, in accordance with the rules then obtaining of the American Arbitration Association. The rules of discovery then pertaining to a California Court of Law shall apply thereto. The unsuccessful party to such arbitration shall pay to the successful party all costs and expenses, including reasonable attorneys' fees incurred therein by such successful party. The successful party shall be determined by the arbitrator.

(g) <u>Severability</u>. If any provision of this Agreement is held invalid or unenforceable by any court of competent jurisdiction, the other provisions of this Agreement will remain in full force and effect. Any provision of this Agreement held invalid or unenforceable only in part or degree will remain in full force and effect to the extent not held invalid or unenforceable.

(h) <u>Withholding</u>. The Company shall withhold such amounts from any compensation or other benefits payable to Executive under this Agreement on account of payroll and other taxes as may be required by applicable law or regulation of any governmental authority.

(i) <u>Acknowledgment</u>. Executive acknowledges that he has been advised by the Company to seek the advice of independent counsel prior to reaching agreement with the

Company on any of the terms of this Agreement. The parties agree that no rule of construction shall apply to this Agreement which construes ambiguous language in favor of or against any party by reason of that party's role in drafting the Agreement.

(j)     Waivers; Modification.  Failure to insist upon strict compliance with any of the terms, covenants, or conditions hereof shall not be deemed a waiver of such term, covenant, or condition, nor shall any waiver or relinquishment of, or failure to insist upon strict compliance with, any right or power hereunder at any one or more times be deemed a waiver or relinquishment of such right or power at any other time or times.  This Agreement shall not be modified in any respect except by a writing executed by each party hereto.

(k)     Notices.  All notices or other communications which are required or permitted hereunder shall be in writing and sufficient if delivered personally or sent by registered or certified mail, postage prepaid, return receipt requested, sent by a nationally recognized overnight courier, or sent by facsimile (with confirmation of receipt), addressed or faxed as follows:

| If to the Company: | Masry & Vititoe<br>5707 Corsa Avenue, 2nd Floor<br>Westlake Village, CA 91362<br>Fax No.:  (818) 991-6200 |
| If to Executive: | Edward L. Masry<br>Masry & Vititoe<br>5707 Corsa Avenue, 2nd Floor<br>Westlake Village, CA 91362<br>Fax No.:  (818) 991-6200 |

or at such other address as the party to whom notice is to be given may have furnished to the other party in writing in accordance herewith.  If such notice or communication is mailed, such notice or communication shall be deemed to have been given on the third (3rd) business day following the date on which such communication is posted.   Otherwise, such notice or communication shall be deemed to have been given on the date of confirmation of delivery.

(l)     Descriptive Headings; Certain Interpretations.  Descriptive headings are for convenience only and shall not control or affect the meaning or construction of any provision of this Agreement.  Except as otherwise expressly provided in this Agreement: (i) any reference in this Agreement to any agreement, document or instrument includes all permitted supplements and amendments; (ii) a reference to a law includes any amendment or modification to such law and any rules or regulations issued thereunder; (iii) the words "include," "included" and "including" are not limiting; and (iv) a reference to a person or entity includes its permitted successors and assigns.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first written above.

COMPANY:                    MASRY & VITITOE,
                            A PROFESSIONAL CORPORATION


                            By: _James W. Vititoe_____
                                James W. Vititoe, Secretary


EXECUTIVE:                  _EDWARD L. MASRY_____
                            EDWARD L. MASRY

# EXHIBIT 2

1231431.1

EXHIBIT 2 PAGE 22

**TENTATIVE RULINGS**

EVENT DATE: 05/06/2009          EVENT TIME: 09:00:00 AM          DEPT.: J6
JUDICIAL OFFICER: Kent Kellegrew

CASE NUM:  P079907
CASE TITLE: MATTER OF THE EDWARD L. MASRY TRUST

CASE CATEGORY:     Probate                    CASE TYPE:  Trust Proceedings

EVENT TYPE:  Miscellaneous Hearing (PR)  - Verified Petition to Take Retain and Preserve Trust Property
CAUSAL DOCUMENT/DATE FILED:  Petition - Other, 03/18/2009

---

Hearing Date: May 6, 2009

If it is your intention to submit on the tentative decision, all that is required is that you submit a telefax to Judge Kellegrew's secretary, Claudia Nevarez, at 805.981.5929, stating that you submit on the tentative. If objectors appear in Court, the Judge will continue the matter and notify your office of the hearing date.

The Court intends to GRANT the petition in the following respect. The Court concludes that the 2005 Trust is presumed to be effective, until and unless the petition to invalidate the trust (filed October 18, 2006) is granted. Thus, the property identified in the trust document, and including Ed Masry's share of the employment agreement benefits, as determined by the Court of Appeal, belong to the trust and should be transferred to the trust.

The Court will order Masry & Vititoe to pay Mr. Masry's share of the employment agreement benefits to the trustees of the 2005 Trust, and will order the trustees to place the funds in a blocked interest bearing account, pending the outcome of the petition to invalidate the 2005 Trust. The Court is under the impression that the parties reached a stipulation with respect to the proceeds of the family home, and inquire whether the interest bearing CD holding these funds is somehow a blocked account.

EXHIBIT 2 PAGE 23

# EXHIBIT 3

1231431.1

EXHIBIT 3 PAGE 24

1
2
3
4
5
6
7
8
9
10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
11              **FOR THE COUNTY OF VENTURA**
12
In the Matter of                          Case No.: P079907
13
                                          **[PROPOSED] ORDER TO TAKE,**
14      **THE EDWARD L. MASRY TRUST**       **RETAIN AND PRESERVE TRUST**
        **DATED NOVEMBER 23, 2005**         **PROPERTY**
15
                                          [Probate Code § 16006]
16
                                          Hearing Date: May 6, 2009
17                                         Time: 9:00 a.m.

18                                         Hon.  Kent M. Kellegrew
                                          Dept.  J6
19                                         Original Filing Date: October 18, 2006
20

21          Having reviewed and considered the Petition for an Order to Take, Retain and

22   Preserve Trust Property and all papers filed in support of and in opposition to the Petition

23   and having heard and considered oral argument of counsel, specifically John M. Rochefort

24   on behalf of Petitioner and Lyle R. Mink on behalf of Respondent, and it appearing that such

25   Order is proper under the circumstances,

26          IT IS NOW ORDERED, ADJUDGED AND DECREED as follows:

27
                                              EXHIBIT _3__ PAGE _25_
28

                                          1
─────────────────────────────────────────────────────────────
              [PROPOSED] ORDER TO TAKE, RETAIN AND PRESERVE TRUST PROPERTY
LEGAL02/31498448v1

1    I.    **Joette Masry-Dell** shall forthwith do each of the following:

2    1.    Instruct Masry & Vititoe in writing to pay fifty percent of all Basic

3    Termination Payments and Supplemental Termination Payments that become due in the

4    future under Edward Masry's Employment Agreement to Louis Masry and Louanne Masry

5    as co-trustees of the 2005 Edward L. Masry Trust;

6    2.    Take all necessary steps to assign to Louis Masry and Louanne Masry

7    as co-trustees of the 2005 Edward L. Masry Trust the certificate of deposit (CD) in the Bank

8    of America that currently holds Edward Masry's fifty percent share of the proceeds of sale of

9    Edward and Joette Masry's family residence, plus accrued interest; and

10    3.    Upon maturity in October 2009, transfer all sums in the aforementioned

11    CD, including principal and interest to Louis and Louanne Masry by bank check made

12    payable to "Louis Masry and Louanne Masry, co-trustees of the 2005 Edward L. Masry

13    Trust," which check shall be delivered to John M. Rochefort at Alston & Bird LLP, 333 So.

14    Hope Street, Los Angeles, California, 90071.

15    II.    **Masry & Vititoe APC**, or if appropriate the debtor in possession or

16    trustee of Masry & Vititoe's pending bankruptcy proceedings, shall pay to Louis Masry and

17    Louanne Masry, as co-trustees of the 2005 Edward L. Masry Trust, fifty percent of all Basic

18    and Supplemental Termination Payments that become due under Edward Masry's

19    Employment Agreement.

20    III.    **Louis Masry and Louanne Masry**, as co-trustees of the 2005 Edward

21    L. Masry Trust, shall deposit all sums described above in a blocked interest bearing account

22    at City National Bank, 2655 Townsgate Road, Westlake Village, CA. 91361, pending the

23    resolution of: (1) Joette Masry-Dell's October 18, 2006 Will Contest and Petition to Revoke

24    Probate of Purported Will in Case No. P079879; (2) the remaining issues, if any, raised by

25    the pending Petitions in actions numbered P079906 and P079907; or, (3) as further ordered

26    by the Court.  The foregoing account shall be established and held by Louis and Louanne

27    Masry in their capacities as co-trustees of the 2005 Edward L. Masry Trust.

28

IV.    **The Court** determines that the 2005 Edward L. Masry Trust is presumptively valid until and unless: (1) the foregoing October 18, 2006 Petition in Case No. P079879 is granted; (2) the remaining issues, if any, raised by the pending Petitions in actions numbered P079906 and P079907 are resolved; or, (3) further order of the Court. Until such Petition is determined or further order of the Court, the property, payments and benefits described above are deemed the property of Edward Masry's 2005 Trust and not the separate property of Joette Masry-Dell.

DATED: _____    _____
                                 KENT M. KELLEGREW
                                 JUDGE OF THE SUPERIOR COURT


Submitted by:

JOHN M. ROCHEFORT
TODD B. BENOFF
ALAN D. HEARTY
ADRIENE PLESCIA LYNCH
**ALSTON & BIRD LLP**



_____
           John M. Rochefort

Attorneys for Petitioners
**LOUIS MASRY** and **LOUANNE MASRY**,
formerly known as LOUANNE MASRY WEEKS

EXHIBIT __3__ PAGE __27__

LEGAL02/31498448v1

| In re: LAW OFFICES OF MASRY & VITITOE, | CHAPTER 11 |
| --- | --- |
| | CASE NUMBER: 1:09-BK-20447 |
| Debtor and Debtor in Possession | |

**NOTE:** When using this form to indicate service of a proposed order, **DO NOT** list any person or entity in Category I. Proposed orders do not generate an NEF because only orders that have been entered are placed on the CM/ECF docket.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 333 S. Hope Street, Los Angeles, California 90071

The foregoing document described as **RESPONSE OF ESTATE OF EDWARD L. MASRY TO DEBTOR'S EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL; DECLARATION OF JOHN M. ROCHEFORT IN SUPPORT THEREOF** will be served or was served on the judge (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

    **I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On September 4, 2009, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

        ☒    Service information continued on attached page

    **II. SERVED BY U.S. MAIL OR OVERNIGHT MAIL**(indicate method for each person or entity served):
    On September 4, 2009, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. *Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.*

        ☒ Service information continued on attached page

    **III. SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on September 4, 2009, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. *Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.*

        ☒ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 09/04/2009 | Rosa Nelly Villaneda | *Rosa Nelly Villaneda* |
| --- | --- | --- |
| Date | Type Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

January 2009                                                  **F 9013-3.1**

1

31497886 2.DOC

*In re: Law Offices of Masry & Vititoe*
<u>U.S. Bankruptcy Court, Case No.: 1:09-BK-20447</u>

## <u>SERVICE LIST</u>

### <u>SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF)</u>

- Katherine Bunker    kate.bunker@usdoj.gov
- Cynthia M Cohen    cynthiacohen@paulhastings.com
- Leslie A Cohen    leslie@lesliecohenlaw.com, jaime@lesliecohenlaw.com
- Thomas M Geher    tmg@jmbm.com
- Leib M Lerner    leib.lerner@alston.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Christine S Upton    csupton@kscllp.com

### <u>SERVED BY U.S. MAIL</u>

<table>
<tr>
<td>

**<u>Debtor in Possession</u>**
Law Offices of Masry & Vititoe
5707 Corsa Avenue, 2nd Floor
Westlake Village, CA 91362

</td>
<td>

**<u>U.S. TRUSTEE</u>**
Katherine Bunker
Office of the United States Trustee
21051 Warner Center Lane, Suite 115
Woodland Hills, CA 91367
kate.bunker@usdoj.gov

</td>
</tr>
<tr>
<td>

**<u>Proposed Counsel for Debtor in Possession</u>**
Leslie A. Cohen, Esq.
J'aime K. Williams, Esq.
LESLIE COHEN LAW, PC
506 Santa Monica Boulevard, Suite 200
Santa Monica, CA 90401

</td>
<td>

Bank of Whittier
15141 East Whittier Boulevard
Whittier, CA 90603

</td>
</tr>
<tr>
<td>

California Attorney Lending LLC
c/o Cynthia Cohen – Paul Hastings
515 south Flower Street, 25th Floor
Los Angeles, CA 90071
cynthiacohen@paulhastings.com

</td>
<td></td>
</tr>
</table>

### <u>20 Largest Unsecured Creditors</u>

<table>
<tr>
<td>

Joseph DiNardo
The DiNardo Firm
6400 Main Street, #120
Williamsville, NY 14221
jdinardo@counselfin.com

</td>
<td>

Paul Taing
c/o John Carpenter
CARPENTER & ZUCKERMAN LLP
8827 W. Olympic Boulevard
Beverly Hills, CA 90211

</td>
</tr>
</table>

| | |
|---|---|
| 1 | California Lit Funding |
| | c/o Richard Schwartz, Esq. |
| 2 | 6351 Owensmouth Avenue, #100 |
| | Woodland Hills, CA 91367 |
| 3 | raspc@aol.com |

California Lit Funding
c/o Richard Schwartz, Esq.
6351 Owensmouth Avenue, #100
Woodland Hills, CA 91367
raspc@aol.com

Chen Shih
c/o John Carpenter
CARPENTER & ZUCKERMAN LLP
8827 W. Olympic Boulevard
Beverly Hills, CA 90211

Jackie Masry
c/o Delores Yarnall, Esq.
220 N. Glendale Avenue, #103
Glendale, CA 91206
dyarnall@yarnalllaw.com

Law Offices of Parker Milliken
c/o Rick Robins, Esq.
555 S. Flower Street
Los Angeles, CA 90071
rrobins@pmcos.com
rblessing@pmcos.com

Law Offices of McCurdy & McCurdy
c/o Scot Wert, Esq.
817 Greenview Drive
Grand Prairie, TX 75050
swert@fostersear.com

AT&T Advertising & Publishing [BY MAIL]
P.O. Box 989046
West Sacramento, CA 95798-9046

Louis Masry/Louanne Masry [BY EMAIL]
c/o John Rochefort – Alston & Bird
333 S. Hope Street 16th Floor
Los Angeles, CA 90071
mark.rochefort@alston.com

LexisNexis/ lawyers.com [BY MAIL]
P.O. Box 894166
Los Angeles, CA 90189

Yellowbook [BY MAIL]
P.O. Box 3162
Cedar Rapids, IA 5240

Idearc Media LLC [BY MAIL]
P.O. Box 619009
DFW Airport, TX 75261

JKK [BY MAIL]
5030 Barrier Island Court
Mount Pleasant, SC 29466

**SERVED BY PERSONAL SERVICE**

Honorable Maureen A. Tighe
United States Bankruptcy Judge
Central District of California
Courtroom 302
21041 Burbank Boulevard
Woodland Hills, CA 91367

3